HOLLY LUMBER & SUPPLY CO. *v.* FRIEDEL.

1. FRAUDULENT CONVEYANCES—PRESUMPTIONS.

Subsequent purchaser who has his deed first recorded is presumed to be a *bona fide* purchaser without notice unless the contrary is made to appear (3 Comp. Laws 1929, § 13304).

2. NOTICE—BURDEN OF PROOF.

The burden of proving notice, either actual or constructive, is on the party alleging it.

3. SAME—IMPLIED NOTICE.

Implied notice is such kind of actual notice as consists of knowledge of facts so informing that a reasonably cautious person would be led by them to the ultimate fact; that which, if prosecuted with ordinary diligence, will furnish information of the fact.

4. VENDOR AND PURCHASER—FRAUDULENT CONVEYANCES—CONSTRUCTIVE NOTICE.

Fact that purchaser of vendee's interest in real estate knew of vendee's indebtedness does not thereby charge such purchaser with constructive notice that it was secured by an unrecorded mortgage on the property (3 Comp. Laws 1929, § 13304).

5. SAME—EVIDENCE.

Purchaser of vendee's interest in real estate, who ascertained ownership of property from register of deeds, amount necessary to stop foreclosure proceedings and balance due on land contract from vendor's grantee, and vendee and her husband informed purchaser's president of total amount of indebtedness against property when he took their quitclaim deed, *held*, not chargeable with constructive notice of lien of unrecorded mortgage given by vendee to defendant, nor guilty of designedly abstaining from making inquiries notwithstanding discrepancy in information received from vendor's grantee and vendee (3 Comp. Laws 1929, § 13304).

Appeal from Genesee; Parker (James S.), J. Submitted January 18, 1935. (Docket No. 136, Calendar No. 37,239.)   Decided May 17, 1935.

Bill by Holly Lumber & Supply Company, a Michigan corporation, against Joseph C. Friedel and wife, White Star Refining Company, a Delaware corporation, and others to quiet title to real estate. Defendants Friedel and White Star Refining Company appeal from decree quieting title in plaintiff as against defendant corporation. Affirmed.

*Darin & Belanger* (*Nelson S. Shapero,* of counsel), for plaintiff.

*Goodenough, Voorhies, Long & Ryan,* for defendants Friedel and White Star Refining Company.

EDWARD M. SHARPE, J. In March, 1928, Lizzie G. Fellows as vendor executed a land contract to Beatrice L. Striggow as vendee of a piece of property located on Louisa avenue in Flint, Michigan. The purchase price was $18,000, with a down payment of $3,000 and the balance at the rate of $150 per month. At the time of this purchase, Mrs. Striggow was purchasing another piece of property on Corunna Heights in Flint, Michigan, and there was a balance due on this property of about $2,500.

Mrs. Striggow, being desirous of building a gasoline station on the Louisa avenue property, borrowed the sum of $8,500 from the White Star Refining Company and they in turn took a mortgage for $6,000 upon the Corunna Heights property and an assignment of vendee's interest in the Louisa avenue property for $2,500. This latter assignment was made April 12, 1928, but not recorded until June 13, 1930.

Mrs. Fellows, the vendor in the contract for the Louisa avenue property, died, and on December 13,

1929, her heirs conveyed her interest as vendor in the property to defendant Joseph C. Friedel and he on about January 27, 1930, began suit to foreclose the land contract. On March 29, 1930, a decree was entered finding the amount due vendor to be $1,455.52. Prior to April, 1930, Mrs. Striggow, the contract vendee, had been indebted to the Holly Lumber & Supply Company, plaintiff herein, to the extent of about $10,500. The president of this company, Mr. Haddan, learning of the foreclosure proceedings, began an investigation to ascertain the status of the indebtedness owing to his company. He made inquiries at the office of the register of deeds and there learned that the title holder of the property was Joseph C. Friedel and that the property had been sold on a land contract. He also consulted Mr. Striggow, husband of Mrs. Striggow, vendee in the land contract, and was informed that the amount of the indebtedness against the property was approximately $18,000, but did not get any details as to specific items making up this amount. Mr. Haddan then went to Mr. Friedel's attorney to ascertain the amount necessary to stop foreclosure proceedings or redeem the land contract and was there informed that the amount necessary to pay was $1,638.70, and that the balance on the contract was $13,000 or $14,000, although the actual balance due on the contract was $14,250.06. After ascertaining these facts, plaintiff took a quitclaim deed from Mrs. Striggow and the same was delivered April 17, 1930. At the time this deed was given, Mrs. Striggow, through her tenant, was in possession of the property. In March, 1932, plaintiff filed its bill of complaint asking that its title be confirmed as against all defendants except defendant Friedel and that the alleged interest of defend-

ant White Star Refining Company be declared void and removed as a cloud upon plaintiff's title. The court found in favor of plaintiff and decreed that its title should be quieted as against the refining company. From this decree defendant appeals.

The issue in this cause is whether plaintiff was a *bona fide* holder of Striggow's interest so as to cut off the lien of the refining company under its assignment. It is contended on the part of the refining company that the absence of the copy of the land contract or explanation of such non-production together with the absence of any inquiry to explain the discrepancy between the figures given to plaintiff by Mr. Striggow and vendor's attorney are circumstances which deprive plaintiff of being a good faith purchaser.

Section 13304, 3 Comp. Laws 1929, is as follows:

"Every conveyance of real estate within the State hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith * * * whose conveyance shall be first duly recorded. The fact that such first recorded conveyance is in the form * * * of a quitclaim deed * * * shall not affect the question of good faith."

"The presumption of law is, that a subsequent purchaser, who has got his deed first recorded, is a *bona fide* purchaser without notice, unless the contrary is made to appear." *Godfroy* v. *Disbrow,* Walk. Ch. (Mich.) 260, 266.

"The burthen on proving notice, either actual or constructive, is upon the complainants and we cannot add to the evidence by assumption for the purpose of finding what does not otherwise appear." *Larzelere* v. *Starkweather,* 38 Mich. 96, 107.

The general rule with reference to implied notice is well stated in 46 C. J. p. 540:

"Implied notice is such kind of actual notice as consists of knowledge of facts so informing that a reasonably cautious person would be led by them to the ultimate fact; that which, if prosecuted with ordinary diligence, will furnish information of the fact."

In *Converse* v. *Blumrich,* 14 Mich. 109, 120 (20 Am. Dec. 230), we said:

"A person is chargeable with constructive notice where, having the means of knowledge, he does not use them. *Mayor of Baltimore* v. *Williams,* 6 Md. 235. If he has knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries, and does not make, but on the contrary studiously avoids making obvious inquiries, he must be taken to have notice of those facts which, if he had used ordinary diligence, he would readily have ascertained: *Whitbread* v. *Taylor & Boulnois,* 1 Y. & C. Ex. 303 (160 Eng. Rep. 123). But he cannot be bound to do more than apply to the party in interest for information, and will not be responsible for not pushing his inquiries further, unless the answer which he receives corroborates the prior statements, or reveals the existence of other sources of information."

See, also, *Thomas* v. *City of Flint,* 123 Mich. 10, 17 (47 L. R. A. 499), and *American Cedar & Lumber Co.* v. *Gustin,* 236 Mich. 351, 360.

Nor is the fact that plaintiff knew that Mrs. Striggow had debts any notice that the indebtedness was secured by a mortgage.

In *Bell* v. *Tyson,* 74 Ala. 353, the court said:

"The defendants (the purchasers) were not chargeable with constructive notice of plaintiff's un-

recorded mortgage, executed by Martin and others upon the crops grown upon the land which they had purchased from plaintiff. It is shown that defendants knew of the existence of plaintiff's claim for the purchase-money but we are aware of no rule of law which makes notice of the existence of a debt to be constructive notice of a secret lien created by an unrecorded mortgage by which such debt is secured.''

See, also, *Wilkinson* v. *Ketler,* 69 Ala. 435; *Pollak* v. *Davidson,* 87 Ala. 551 (6 South. 312).

From an examination of the record we find that at the time the deed was executed and delivered to plaintiff Mrs. Striggow was in possession and operating a gas station on the property in question, that plaintiff made inquiries at the office of the register of deeds to ascertain the ownership of the property. He also discussed with the attorneys for Mr. Friedel and was not informed by them of any facts that would suggest further inquiry. He then consulted Mr. Striggow as to the amount of debts against the property and was informed that the amount was approximately $18,000, whereas in fact the amount necessary to stop foreclosure was $1,638.70 and the balance due on the land contract was $14,250.06, nor is there any evidence in the record to show that plaintiff knew that Mrs. Striggow did not have her copy of the contract, in fact the record does not disclose that the contract was executed in duplicate.

We cannot find that Mr. Haddan designedly abstained from making inquiries, but we do find that he inquired from such sources as he thought should know the facts. He may not have used the utmost caution, but the information which he gained did not necessarily lead him to make further inquiry. Nor

do we think that the discrepancy between the actual amount due on the land contract and the amount plaintiff was informed was due is in itself sufficient to compel it to make a more diligent search than it did.

The decree of the lower court is affirmed, with costs to plaintiff, as against the White Star Refining Company.

POTTER, C. J., and NELSON SHARPE, NORTH, FEAD, WIEST, BUTZEL, and BUSHNELL, JJ., concurred.