# STATE OF MICHIGAN

# COURT OF APPEALS

DIONTE MOORE,

        Plaintiff/Counter Defendant-
        Appellee,

and

OMEGA PT, L.L.C.,

        Intervening Plaintiff/Counter
        Defendant-Appellee,

and

FIRST NATIONAL REHABILITATION and
GREAT LAKES TRANSPORTATION,

        Intervening Plaintiff.

v

AUTO-OWNERS INSURANCE COMPANY,

        Defendant/Counter Plaintiff-
        Appellant.

UNPUBLISHED
October 27, 2016

No. 327872
Wayne Circuit Court
LC No. 14-000264-NF

---

AAA MEDICAL TRANSPORTATION,

        Plaintiff/Counter Defendant-
        Appellee,

v

AUTO-OWNERS INSURANCE COMPANY,

        Defendant/Counter Plaintiff-
        Appellant.

No. 327946
Wayne Circuit Court
LC No. 14-007261-CZ

---

Before: FORT HOOD, P.J., and GLEICHER and O'BRIEN, JJ.

-1-

PER CURIAM.

In these consolidated matters, plaintiff Dionte Moore sought first-party no-fault benefits and various providers sought reimbursement for services following an automobile accident. Moore's no-fault insurer, Auto-Owners Insurance Company, filed a fraud and civil conspiracy counter-complaint against Moore, Omega PT, L.L.C., and AAA Medical Transportation. Although the circuit court granted summary disposition in Auto-Owners' favor on the coverage issue, it denied the insurer's request to sanction these parties for filing frivolous claims. We affirm the circuit court's ruling as to Omega, but vacate the order denying sanctions as to Moore and AAA and remand for further consideration.

## I. BACKGROUND

On March 27, 2013, Dionte Moore was injured while riding as a passenger in Lalita Harris's vehicle. Moore experienced pain in his neck, back and right leg and visited the ER immediately after the accident. The treating physician recommended physical therapy. The following day Moore started therapy at Omega PT but he claimed he "wasn't getting the right treatment I needed there" and so he switched providers. At Moore's deposition, an attorney questioned why Moore, who lived in Ypsilanti, chose to treat with a physical therapist in Rochester Hills. Moore asserted that "a guy named Mr. Ray" telephoned him "out the blue" and offered to pay him $40 cash for each visit if Moore allowed AAA Medical Transportation to drive him to Omega for therapy. Moore described that he travelled to Rochester Hills and entered Omega's facility on various occasions. At each visit, Moore signed in and waited five to 15 minutes. He indicated that Omega provided no treatment during these visits; physical therapists did not massage or apply hot or cold packs to Moore's injuries and instructed him in no exercise techniques.

Moore's complaint alleged that Auto-Owners Insurance Company wrongfully refused to pay "no-fault, underinsured and uninsured motorist benefits." Moore sought benefits under a policy held by his grandmother, with whom he resided. Omega intervened in the action seeking payment, AAA filed a separate action for reimbursement, and the circuit court consolidated the matters. Following Moore's shocking revelations, Auto-Owners filed a counterclaim against Moore, Omega, and AAA alleging fraud and civil conspiracy to commit fraud. Based solely on Moore's testimony, Auto-Owners also brought a motion for summary disposition of the first-party no-fault case, asserting that coverage did not exist under the policy's fraud provision.[1] Neither Moore nor AAA responded to Auto-Owners' motion or counterclaim. In fact, counsel for both parties withdrew their representation.

---

[1] The fraud provision of Auto-Owners' policy with Moore's grandmother provides:

> We will not cover any person seeking coverage under this policy who has made fraudulent statements or engaged in fraudulent conduct with respect to . . . any occurrence for which coverage is sought.

Omega, however, vehemently disputed the allegations that it had not provided treatment for Moore. Joseph Ruefiel, Omega's "administrator/Owner" submitted an affidavit with Omega's responsive brief, avowing:

> 3. I remember Dionte Moore initially presented for treatment with his girlfriend Lalita Harris and they received treatment at the same time from March 28, 2014 until April 23, 2014. Lalita Harris stopped treatment but Dionte Moore continued treatment.
>
> 4. Dionte Moore received treatment for several months and I remember him very well, he often wore his hair in braids. He was also distinctive in the manner of his dress and in his actions/gestures.
>
> 5. As a Physical Therapist I treated Dionte Moore directly. I did an initial evaluation and multiple re-checks.
>
> * * *
>
> 7. . . . [A]ll [billed] treatment and services, be it physical therapy, hot/cold packs, ultrasound, or massage therapy were rendered to Dionte Moore.
>
> 8. It is our policy to have every patient sign in before any therapy and/or treatment is rendered. Dionte Moore did sign in on every therapy and/or treatment date.
>
> 9. We do not have a waiting room. It is our policy that patients come in and do physical therapy right away and then leave. There is no waiting at our facility.

The circuit court subsequently granted summary disposition in Auto-Owners' favor and dismissed the benefit and reimbursement claims of Moore, AAA and Omega, as well as of the other intervening parties. The court further issued a declaratory judgment that coverage did not exist in this case. The court later clarified that it did not resolve Auto-Owners' fraud counterclaims as they were rendered moot by the summary dismissal of the claims for benefits. Auto-Owners also requested sanctions against Moore, AAA, and Omega and their attorneys pursuant to MCR 2.114, MCL 600.2591, and MCR 2.625(A)(2). The circuit court succinctly denied the request: "Denying it, letting sleeping dogs lie."

Auto-Owners now appeals the denial of its sanctions request.

II. ANALYSIS

We review for clear error a circuit court's resolution of a request to impose sanctions and the court's underlying determination regarding the frivolity of a claim or defense. *Guerrero v Smith*, 280 Mich App 647, 677; 761 NW2d 723 (2008); *State Farm Fire & Cas Co v Johnson*, 187 Mich App 264, 268-269; 466 NW2d 287 (1990). We review de novo legal questions regarding the proper interpretation and application of statutes and court rules. *Taylor v Kent Radiology, PC*, 286 Mich App 490, 515; 780 NW2d 900 (2009).

-3-

As a general rule, civil litigants are responsible for their own attorney fees, unless a statute, court rule, contract, or common-law principle creates an exception and shifts the burden onto the opponent. *Reed v Reed*, 265 Mich App 131, 164; 693 NW2d 388 (2013). MCR 2.114 provides such an exception:

(D) Effect of Signature. The signature of an attorney or party, whether or not the party is represented by an attorney, constitutes a certification by the signer that

(1) he or she has read the document;

(2) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and

(3) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

(E) Sanctions for Violation. If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.

(F) Sanctions for Frivolous Claims and Defenses. In addition to sanctions under this rule, a party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2). The court may not assess punitive damages.

The court rule imposes an "affirmative duty" on counsel "to conduct a reasonable inquiry" into both the factual and legal basis of a claim before he or she signs the complaint. *LaRose Market, Inc v Sylvan Ctr, Inc*, 209 Mich App 201, 210; 530 NW2d 505 (1995). By signing the document, the attorney attests that the complaint is legally and factually supported and is being filed for a proper purpose. *In re Pitre*, 202 Mich App 241, 243-244; 508 NW2d 140 (1993). Signing a document in violation of these rules demands sanctions. *Guerrero*, 280 Mich App at 678.

MCR 2.625(A)(2) provides, "[I]f the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591." MCL 600.2591(1) in turn entitles a party to recover attorney fees and costs for a frivolous action:

Upon motion of any party, if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney.

MCL 600.2591(3)(a) defines a "frivolous" action as falling into one of three categories:

(*i*) The party's primary purpose in initiating the action or asserting the defense was to harass, embarrass, or injure the prevailing party.

(*ii*) The party had no reasonable basis to believe that the facts underlying that party's legal position were in fact true.

(*iii*) The party's legal position was devoid of arguable legal merit.

Just as under the court rule, if the court determines that a claim is frivolous under the statutory meaning, the court must impose sanctions.

The circuit court clearly erred in denying Auto-Owners' request for sanctions against Moore and AAA without making any record findings regarding the merit of their claims. From the record before us at least, it appears that Moore and AAA raised fraudulent and frivolous benefit claims against Auto-Owners. Moore's deposition testimony supports that he "had no reasonable basis to believe that the facts underlying [his] legal position were in fact true." MCL 600.2591(3)(a)(*ii*). He requested no-fault coverage from Auto-Owners but "made fraudulent statements" that negated coverage. Moore conceded that he sought benefits for physical therapy and medical transportation when he did not receive physical therapy and accepted a bribe to use AAA and Omega. Moore did not attempt to clarify his testimony thereafter to avoid the taint of fraud. AAA made no response to dispute the accusations levied by Moore. Accordingly, it appears that Moore's request for coverage and AAA's claim for payment were not based in fact and were frivolous. The circuit court seemed to recognize this, describing the case as "troubling" and that "[t]he misrepresentations here . . . might border on criminal." The court repeatedly commented that a case such as this could harm the reputations of the legal and medical professions. The circuit court is in a better position to judge the credibility of the parties and should decide the sanctions issue in the first instance. The court's one-line denial of sanctions without any recitation of record facts or the law was insufficient in this regard. Accordingly, we vacate the circuit court's denial of sanctions against Moore and AAA and remand for further consideration.

However, we discern no ground to upset the circuit court's denial of sanctions against Omega and its counsel. A substantial question of fact exists regarding whether Omega filed a frivolous claim and a reasonable view of the evidence supports that Omega filed a factually viable claim. Ruefiel attested that he specifically remembered Moore and personally provided services to him. Ruefiel averred that for each date of service that it billed Auto-Owners, Moore had in fact received treatment. While Moore testified that on arrival at Omega he "would just sit there and leave" without having been treated, Ruefiel countered that Omega has no waiting room and that when patients arrive they "do physical therapy right away and then leave."

The circuit court did not consider Ruefiel's affidavit when deciding Auto-Owners' summary disposition motion because it was belatedly filed. The court acknowledged that the affidavit could have established a question of fact, but made no ruling in this regard. In any event, Moore's own statements established his fraud and negated coverage. Moore did not recant and a third-party's averments could not revive his claim for coverage. Therefore, in summarily dismissing this coverage dispute (and deeming Auto-Owners' fraud and civil

conspiracy claims moot), the circuit court made no direct or implicit ruling that Omega participated in any fraud.

Pertaining to Auto-Owners' request for sanctions, Ruefiel's affidavit creates a factual question regarding whether Moore received treatment. If Moore did receive treatment, Omega's claim for payment would not be frivolous. Ruefiel's affidavit stated facts rather than mere conclusions and was based on personal knowledge. Moore proposed a different version of the facts. This discrepancy creates a material question of fact that this Court cannot and should not resolve. Sanctions should not be used to "penalize[] a party whose claim initially appears viable but later becomes unpersuasive." *Louya v William Beaumont Hosp*, 190 Mich App 151, 163; 475 NW2d 434 (1991). Record evidence supports that Omega had a reasonable basis to believe that the facts underlying its legal position were true. Accordingly, we discern no error in the denial of sanctions as to Omega.

We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Karen M. Fort Hood
/s/ Elizabeth L. Gleicher